## EDWARD O'BRIEN *vs.* WEST END STREET RAILWAY COMPANY.

Suffolk.   January 11, 1899. — March 4, 1899.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Personal Injuries to Motorman of Street Car — Negligence of Superintendent.*

In an action for personal injuries occasioned to a motorman after the derailment of his car, there was evidence that the defendant's superintendent gave an order to the motorman which placed him in a dangerous position if a car should come forward on the other track; that he then, while the motorman was in this position, gave an order to the motorman on a car on the other track, standing at a distance of six or eight feet from the front end of the plaintiff's car, to come ahead;

and that as the car did so the plaintiff, while raising himself from a stooping position, was caught between the guard rails of the two cars and was injured. *Held,* that the evidence was sufficient to warrant the jury in finding that the superintendent was guilty of negligence which contributed to the injury.

TORT, for personal injuries occasioned to the plaintiff while in the defendant's employ. The declaration was under the employers' liability act, St. 1887, c. 270. At the trial in the Superior Court, before *Sherman,* J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions, which appear in the opinion.

*G. H. Mellen & G. Hay, Jr.,* for the defendant.

*J. A. Lowell,* for the plaintiff.

LATHROP, J. There is no dispute about the main facts in this case, and the only question is whether there was sufficient evidence of negligence on the part of the defendant's superintendent, to warrant the submission of the case to the jury.

The plaintiff was a motorman on an electric car coming towards Boston. About ten minutes before the accident to him happened, the rear truck of his car became derailed at a switch. The effect of the derailment was to throw the rear end of the car so far towards the outward track that there was only just room enough for a car on that track to pass without touching. Before the superintendent arrived, the plaintiff had tried to get the truck on the rails again by starting and backing the car. Failing in this, he left the car and placed a " cage " under the wheels which were off the track, while a car in the rear hitched on to his car, and attempted to pull the trucks on to the rail. The " cage " was a hollow iron box about fourteen inches long, four inches wide, and three inches thick, with chains and iron pins attached, used for the purpose of inserting therein a drawbar, when cars were coupled together. The plaintiff had been at this work about five minutes when the superintendent came up and directed the work. After trying to get the car on by means of the cage, the superintendent told the plaintiff to pull up the cage and to use a crowbar. The plaintiff stooped down by the side of the car near the rear trucks for the purpose of taking the cage from underneath the wheels. While so engaged he heard the superintendent, who was standing near the middle of his car, say, " Come ahead with that car." The car came up

on the outward bound track, and, just as it reached the point where the plaintiff was, the plaintiff raised himself from his stooping position, and was caught between the guard rails of the two cars.

The plaintiff testified that he did not know to what car the superintendent referred when he gave the order; and there was other evidence to the effect that the superintendent directed the car which struck the plaintiff to come forward, and motioned with his hand to the motorman to advance. This motorman testified that he started his car forward in answer to the motion and order of the superintendent; and that he did not see the plaintiff, and the first he knew of anything wrong was that he heard a shout or groan, and immediately stopped the car.

The defendant contends that all this happened in broad daylight; that after the superintendent gave the order to the motorman of the car to come ahead, he had a right to rely upon his coming ahead with due prudence; and that the accident was caused by the negligence of the motorman, and not by the negligence of the superintendent. There is nothing in the bill of exceptions to show that the accident happened in broad daylight. The exceptions state that the accident happened " at about twenty minutes past five in the afternoon of October 2, 1896." This, according to the almanac, was about sunset. How light it was does not appear. But the question is not whether the motorman was or was not guilty of negligence; but whether there was any evidence which would warrant the jury in finding that the superintendent was guilty of negligence which contributed to the injury. It seems impossible for us to say, as matter of law, that there was no such evidence. The superintendent gave an order to the plaintiff which placed him in a dangerous position if a car should come forward on the other track. He then, while the plaintiff was in this position, gave an order to the motorman on the other track to come ahead. This car, as the exceptions state, before the order was given, was standing at a distance estimated to be six or eight feet from the front end of the plaintiff's car. When the order was given, the jury might well have found that the object was that the car on the outward track should pass the disabled car and proceed on its way. We have then the superintendent giv-

ing two orders, which, if obeyed, would place the plaintiff in a dangerous situation. There was certainly evidence of negligence in giving these orders.        *Exceptions overruled.*