DAVID REGAN *vs.* SAMUEL LOMBARD & another.

Suffolk.   January 13, 1902. — May 20, 1902.

Present: HOLMES, C. J., LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Practice, Civil,* Exceptions.  *Negligence,* Employer's liability.

A declaration at common law by a workman in a stone yard alleged that the plaintiff was injured by the negligence of the defendant in not furnishing suitable and proper dunnage to be placed between the stones of a pile of curbstones which fell upon the plaintiff.   The presiding judge refused a request of the defendant to rule that upon all the evidence the plaintiff was not entitled to recover.   The request refused did not refer to the pleadings.   The jury returned a verdict for the plaintiff.   *Held,* that on the argument of an exception taken by the defendant to the refusal of the ruling, it was open to the plaintiff to contend that the fall of the stones was due not only to the want of proper dunnage but to the stones being piled improperly, as an amendment of the declaration might have been allowed if the attention of the judge had been called to the matter.

A workman in a stone yard cannot recover at common law against his employer for injuries from the falling of a pile of curbstones caused by improper dunnage or by improper piling, if the stones were piled by his fellow servants and the dunnage placed between them was selected by those servants.

LATHROP, J.   The plaintiff, while in the employ of the defendants, was injured by the falling upon him of a pile of curbstones, on June 13, 1899.   The case was submitted to the jury on a count under the St. of 1887, c. 270, § 1, cl. 2, and a count at common law.   The jury returned a verdict for the plaintiff under the latter count, and the case is before us on the defendants' exceptions to the refusal of the judge who tried the case in the Superior Court to rule, at the close of the plaintiff's evidence, that upon all the evidence the plaintiff was not entitled to recover, and to direct a verdict for the defendants.

The count at common law was based upon the alleged negligence of the defendants in not furnishing suitable and proper dunnage to be placed between the stones, when they were placed one upon the other.   At the argument before us, the plaintiff's counsel also contended that the stones were improperly piled, and as the request for a ruling did not refer to the pleadings, we agree that this point is open to the plaintiff, as an amendment might have been allowed if the attention of the judge had been called to the matter.

The defendants were copartners and for many years had carried on a general teaming business in Boston, requiring about one hundred horses, and also had carried on a granite business, with several stone yards, one of which was at a wharf in Charlestown, where the accident occurred. They dealt principally in large curbing stones. Some of the stones were straight, and others, called circle stones, were curved, forming segments of circles of different radii. The stones varied from five to ten feet in length, from eighteen to twenty inches in width, and from seven to twelve inches thick, being about seven inches thick on the top and from seven to twelve inches on the bottom. These stones came by water, and were unloaded from scows on to the wharf. Some forty or fifty feet back from the cap of the wharf stood a permanent derrick with a long boom which could be raised and lowered in the usual way, and which also swung around describing a circle. The stones were taken by means of this derrick, after they were unloaded, upon the wharf and placed in piles or tiers around the circle described by the boom of the derrick, one end of each pile pointing toward the derrick and the other radiating from it. These tiers of stones formed two circles around the derrick, an inner and an outer circle. The stones were deposited on or taken from the outer circle by lowering the boom, and from the inner circle by raising the boom. The circle stones were placed with their convex side down, the circle stones having the same radii being piled in the same tier or tiers; some of the tiers were from five to ten stones high. These tiers of stone were usually placed near together, the inner ends being six inches apart and the outer ends further apart, being the outside of the circle. Two sticks or pieces of wood called dunnage were placed between every two stones as they were piled at right angles with their length, and from one quarter to one third distant from each end, separating the stones three inches more or less according to the contour of the stones and the thickness of the sticks of wood, separating the stones sufficiently to draw out or put under a chain, and these pieces of wood should be so placed that those in one layer would be directly above those in the layer below. Ordinarily two pieces of wood were used, but sometimes it was necessary to chink up and put in several small pieces in order to keep the piles level.

As stones were sold they were taken in the same way by the derrick from the tier where the stones of the same radius and dimension were found and loaded upon teams, so that the heights of the tiers varied from time to time. At the time of the accident, a tier in the outer circle on the west side of and about opposite the mast of the derrick, that is, about equally distant back from the cap of the wharf, contained five circle stones. The next tier from the north or water side contained one stone ; the next tier on the north side contained two or three stones.

On the day of the accident, the plaintiff and one Hanlon, employed by the defendants, were intending to remove the top stones from this tier of five to get out the third stone from the top. The plaintiff was standing on one side of the tier ready to assist when the three top stones fell or slid off towards the plaintiff, throwing him down and pinning him against the second tier on the north from the one in question, causing the injuries complained of.

The plaintiff had been in the employ of the defendants as a teamster for fifteen or sixteen years. Several months before the accident the plaintiff had been thrown from his team and received injuries which had prevented him from working until about two or three weeks before the present accident. When he returned to the defendants' employ, the defendants set him at work to look after paving stones, in the defendants' yard in Cambridge, and after that he worked in another yard of the defendants at the Boston and Maine Railroad before coming to the yard in Charlestown where the accident occurred.

The only witnesses called by the plaintiff on the question of liability were himself and Samuel Lombard, one of the defendants. Neither of them testified as to the condition of the dunnage at the time of the accident, and, while there was evidence that the dunnage furnished was from old material, there was no evidence that such material was not suitable for the purpose for which it was used, or that the dunnage used in the pile that fell was unsuitable when first placed in the pile, or that it was rotten at the time of the accident. The evidence shows that when a pile was made the plaintiff and his fellow servants selected what pieces of dunnage they needed, and inserted it between the stones.

We do not find any evidence that the stones were not piled properly. If they were not, it was the fault of the fellow servants who piled them.

There is no evidence that the defendants employed incompetent servants, and it does appear that the plaintiff was a man of great experience in the piling and handling of stone.

It is contended by the plaintiff's counsel that the stones were placed in position in September prior to the accident, and that they had not been moved until the day when the accident happened, and that the dunnage had become rotten by its exposure to the weather. We are of opinion that this is not a reasonable inference from the evidence. Lombard testified as follows: " The last shipment of curbstone to the yard was in September prior to the accident. That did not in any way indicate that the pile had remained there for that time, because the stones came in various lengths, from five to nine feet, and with radii varying from six to thirty feet, and if any stone of any particular length was desired the stones on top would have to be removed in order to avoid cutting off the extra length on the stone, so that these piles were continually being moved; for example, if a stone six feet long was under a stone nine feet long, they would take down the upper stone to get at the lower one rather than use the upper one and cut it off. There had been a good many changes in the piles of stones subsequent to the time when they had been left there in September." So the plaintiff testified: " The picking out of a particular stone was being done there right along so the piles had to be changed to get out the stone wanted. They were continually picking out these stones and changing them over." He further testified that he did not know when any particular pile was handled over or any of the stones taken out; and that he did not know when the pile that fell had been handled over.

It did not appear how long the pile had been likely to fall nor what was the cause of the fall; and the burden of proof was on the plaintiff to show this. *Fitzgerald* v. *Boston & Albany Railroad,* 156 Mass. 293.

We have then a case where the tier was placed in position by the fellow servants of the plaintiff, and on the evidence it was conjectural how long it had been piled. The dunnage was

selected by the fellow servants. If the fall was caused either by the use of improper dunnage or by improper piling, the fault was that of the fellow servants, for whose negligence the defendants were not responsible. *Reed* v. *Boston & Albany Railroad*, 164 Mass. 129. *Kenneson* v. *West End Street Railway*, 168 Mass. 1. *Leary* v. *Fitchburg Railroad*, 173 Mass. 373. *Carter* v. *Boston & Albany Railroad*, 177 Mass. 228.

The case of *Millard* v. *West End Street Railway*, 173 Mass. 512, differs essentially from the case before us. In that case the action was not brought at common law, but under the St. of 1887, c. 270, cl. 2. The pile of timbers which fell was erected under the supervision of a superintendent of the defendant, who carelessly ordered it to be done in a way which would be likely to cause it to tumble down, and who, when his attention was called to the matter, persisted in his own way of doing the job. The plaintiff in that case knew nothing about the manner in which the pile was built until the moment of the injury. In the case before us the count was at common law, the pile was not put up under the direction of a superintendent, but by the fellow servants of the plaintiff; and there is no evidence to show that the mode of putting it up was faulty.

On all the evidence we see no ground upon which the plaintiff was entitled to go to the jury upon the count at common law. We express no opinion upon the other counts.

*Exceptions sustained.*

*W. B. Sprout*, (*C. S. Knowles* with him,) for the defendants.

*H. E. Bolles*, (*J. F. Boles & O. O. Partridge* with him,) for the plaintiff.