DAVID REGAN *vs.* SAMUEL LOMBARD & another.

Suffolk.  March 12, 1906. — June 20, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, LORING, & BRALEY, JJ.

*Negligence*, Employer's liability.

It is not the duty of the superintendent in charge of a yard where curbstones, some of them curved, are piled, to warn a workman, who from his previous experience is familiar with the way in which the curbstones are piled and with the general character of the dunnage placed between them to keep them steady and knows that if the curbstones are piled improperly or if the dunnage is rotten the pile or a part of it may be rendered unstable and some of the stones fall off, and who when preparing to remove a curbstone from such a pile by means of a derrick has an unobstructed view of the pile, that he may be injured by some of the stones sliding or falling upon him owing to improper piling or the giving way of decayed dunnage.

TORT, by a workman employed in the stone yard of the defendants at a wharf in that part of Boston called Charlestown, for personal injuries received on June 13, 1899, with three

counts, the first of which was waived by the plaintiff, the second count being under St. 1887, c. 270, § 1, cl. 2, alleging negligence of a superintendent, and the third count being at common law. Writ dated July 14, 1899.

At the first trial in the Superior Court *Richardson*, J. refused to order a verdict for the defendants and submitted the case to the jury upon the second and third counts. The jury returned a verdict for the plaintiff on the count at common law in the sum of $5,000; and the defendants alleged exceptions, which were sustained by this court in a decision reported in 181 Mass. 329.

At the second trial before *Stevens*, J. the plaintiff relied only on the second count under the employers' liability act alleging negligence of a person entrusted with and exercising superintendence. The following facts were not in dispute, nor were they in dispute at the first trial:

The defendants were copartners, and for many years had carried on a general teaming business in Boston, requiring about one hundred horses, and also had carried on a granite business, with several stone yards, one of which was at a wharf in Charlestown where the accident occurred. They dealt principally in large curbstones. Some were straight, and some of the stones, called circle stones, were curved, forming segments of circles of different radii. The stones varied from five to ten feet in length, from eighteen to twenty inches in width, and from seven to twelve inches thick, being about seven inches thick on the top and from seven to twelve inches on the bottom. These stones came by water, and were unloaded from scows upon the wharf.

Some forty or fifty feet back from the cap of the wharf stood a permanent derrick with a long boom which could be raised and lowered in the usual way, and which also swung around describing a circle. After the stones were unloaded, they were taken by means of this derrick from the wharf and placed in piles or tiers around the circle described by the boom, one end of each pile pointing toward the derrick. These tiers of stones formed two circles, an inner and an outer circle. The stones were deposited in or taken from the outer circle by lowering the boom, and from the inner circle by raising it. The circle stones were placed with their convex sides down, those

having the same radii being placed in the same tier or tiers, and piled from five to seven stones high. Two sticks or pieces of wood called "dunnage" were placed between every two stones as they were piled at right angles with their length, from one quarter to one third distant from each end, separating the stones three inches, more or less; and often long binder sticks were used running through two or more piles to steady them. Ordinarily two pieces of wood were used, but sometimes it was necessary to chink up and put in several small pieces in order to keep the piles level.

As stones were sold, they were taken in the same way by the derrick from the tier where the stones of the same radius and dimensions were piled and loaded upon teams, so that the heights of the tiers would vary from time to time. At the time of the accident a tier in the outer circle contained five or six circle stones. The next tier on the water side contained one stone, and the next tier beyond contained two or three.

At the time of the accident, the plaintiff and one Hanlon, employed by the defendants, were about to remove the top stones from the tier of five or six to get out the third stone from the top. The plaintiff had just walked in on the water side of the tier to assist when the three top stones fell or slid off toward him, throwing him down and causing the injuries complained of.

The plaintiff had been in the employ of the defendants as a teamster for fifteen or sixteen years. Several months before, the plaintiff had been thrown from his team and received injuries which had prevented him from working until about two or three weeks before the accident now in question. When he returned to the defendants' employ he was set at work to look after paving stones in their yard at Cambridge and after that he worked in their yard at the Boston and Maine Railroad before coming to the yard in Charlestown where the accident occurred.

Other evidence in the case is described in the opinion.

At the close of the evidence the judge ruled that the plaintiff was not entitled to have the case submitted to the jury, and ordered a verdict for the defendants. The plaintiff alleged exceptions.

*O. O. Partridge,* for the plaintiff.

*C. S. Knowles,* for the defendants.

BRALEY, J. In *Regan* v. *Lombard*, 181 Mass. 329, it was decided that this action could not be maintained at common law, but whether the plaintiff could recover on the count under St. 1887, c. 270, § 1, cl. 2, was not determined. At the second trial the plaintiff relied solely on this count, which alleged that he was injured by reason of the negligence of some person entrusted by the defendants with the duty of superintendence, and who at the time of the accident was engaged in the performance of this duty. Assuming, without deciding, that there was evidence from which the jury could have found that Hanlon was a superintendent within the meaning of the statute; that the curbstones were improperly and insecurely piled, or the dunnage between them either originally was unstable, or had become rotten and unsound, and that in the exercise of reasonable diligence the superintendent should have known of these conditions which might render it unsafe and dangerous for the plaintiff to assist in removing them, yet he cannot recover if at the time of the accident he was guilty of contributory negligence. *Fitzgerald* v. *Connecticut River Paper Co.* 155 Mass. 155. *O'Maley* v. *South Boston Gas Light Co.* 158 Mass. 135. *Wagner* v. *Boston Elevated Railway*, 188 Mass. 437. The stones, when placed, consisted of two circular tiers open at one end, and so arranged that between the inner and outer circles there was a space, into which the plaintiff and other employees went when the stones were to be removed by means of a derrick, the boom of which when lowered for either tier described in its movement the circumference of each circle. As the stones of each tier were piled, when necessary they were adjusted by wooden blocks of different lengths, which kept them separate and rendered the completed pile level and stable. When needed they were raised from their position by the derrick, and lowered upon a dray, and by these removals the height of the tiers varied.

It was the undisputed evidence of the plaintiff that he had been in the employment of the defendants for many years, during which he had assisted in other yards belonging to the defendants in piling and placing similar stones by the method described, and that, although while working in this yard for a considerable time before the accident he did not assist on the tier which fell, yet the tiers in the different yards were sup-

ported substantially in the same way and he was familiar with the process used. In describing this process he further said that it was the duty of those who piled to chink the stones by the use of dunnage, which consisted of such refuse wood as could be picked up on the premises. After being placed the arrangement of the stones which fell involved no complexity of design such as may arise in the adjustment of ways, works and machinery to adapt them to the purposes of a manufacturing establishment where the mechanism employed or the hazard arising from its use is such as not to be fully understood by the inexperienced employee, or where for the first time a servant is directed by his employer, or by those who properly represent him, to use an instrumentality which is defective, and the defect is or should have been known to them, but is unknown to him. In such cases the servant properly may rely upon the presumption that he will not be directed to put himself in a situation where he may be exposed to the chance of physical injury, or called upon to perform his work by using unsafe appliances. *Connolly* v. *Waltham,* 156 Mass. 368. *Cunningham* v. *Atlas Tack Co.* 187 Mass. 51. *Feeney* v. *York Manuf. Co.* 189 Mass. 336. If it could have been found that the accident was caused by the improper piling, or the decayed dunnage which gave way, thus permitting the stones to lose their balance, and to slide or fall upon him, and that the defendants or their representatives should have known and notified the plaintiff of this possible danger, even then he would not have been put in possession of any facts of which he was ignorant, or with which by the use of ordinary care he could not have made himself acquainted. From his former experience he had become familiar with the general character of the dunnage used as well as the proper manner of setting the stones in place, and as a person of ordinary intelligence must have been aware that, if the dunnage was rotten or the stones improperly put in position, the structure, or a part of it, when disturbed, might be rendered unstable and some of the stones fall. Moreover, he testified that when he entered between the tiers his opportunity for observation was unobstructed, and equal to that of anybody, for their general character was plainly visible. Any warning from the superintendent, that if the dunnage was rotten or the stones had become

unplaced they might fall, would have conveyed to him no information of which he did not have already, and the failure to apprise him of an obvious danger, which under the circumstances he either knew or must be held to have known to be present, does not constitute a breach of duty by the superintendent while so acting, and therefore a verdict for the defendants was rightly ordered. *Downey* v. *Sawyer*, 157 Mass. 418. *Goodes* v. *Boston & Albany Railroad*, 162 Mass. 287. *Lamson* v. *American Axe & Tool Co.* 177 Mass. 144. *Meehan* v. *Holyoke Street Railway*, 186 Mass. 511.

*Exceptions overruled.*