WILLIAM GLAVIN *vs.* BOSTON AND MAINE RAILROAD.

Suffolk.   November 14, 1912. — January 29, 1913.

Present: RUGG, C. J., LORING, BRALEY, & SHELDON, JJ.

*Negligence,* Employer's liability.

One employed as an oiler in a grain elevator, whose duty it is to oil the bearings of the shafting while the machinery is in operation, and who is injured by reason of a lever on which he has rested one foot being shifted from below in obedience to an order of a superintendent, cannot recover from his employer for such injury, if he had engaged to care for himself and fully understood that before stepping upon such a lever he must look out to see that no one was going to shift it from below, and if, under the general system of operating the elevator with which the oiler was familiar, the superintendent could shift such a lever without first ascertaining whether the oiler was using the lever as a temporary foothold.

TORT for personal injuries sustained on February 21, 1908, when the plaintiff was employed as an oiler in a grain elevator of the defendant at or near the Hoosac Tunnel Docks in that part of Boston called Charlestown, the declaration containing three counts, the first under the employers' liability act alleging negligence of a superintendent, the second under the same statute alleging a defect in the ways, works or machinery of the defendant, and the third at common law alleging that the plaintiff was put at work in an unsafe place and without sufficient warning. Writ dated April 13, 1908.

In the Superior Court the case was tried before *Wait,* J. The material facts shown by the evidence are stated in the opinion. At the close of the evidence the judge ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*A. J. Daly,* for the plaintiff.

*A. R. Tisdale,* for the defendant, submitted a brief.

BRALEY, J. The plaintiff was employed to oil the bearings of the shafting on the first and second floors of the defendant's grain elevator while the machinery was in operation. In oiling the bearing of the shaft where he was at work when injured he was obliged to rest one foot on a narrow platform running parallel with the shaft, and the other foot on the handle of a shifting lever used to

move the belt to and from the driving pulley. The shaft being at an elevation of ten feet or more, the lever was worked from the floor below by use of dependent cords switching the power on or off at the will of the operator. While the plaintiff stood in this position bending over in the act of pouring oil into the oil hole of the bearing, one Gleason, who on the evidence the defendant concedes was an acting superintendent, directed one McNamara to "pull the horse," meaning the lever in question. The order having been obeyed, the plaintiff's footing gave way as the lever moved, and he fell into the machinery. The third count of the declaration is at common law for failure to warn the plaintiff of the dangerous character of his employment. But from his own testimony he was fully instructed when he began work as to the mode of oiling; and the attendant dangers were pointed out. Indeed he very fully stated the conditions, "I always looked to see if I can step out on the lever with safety. It is always expected that I should do that. In going about and oiling up those different shafts I always have been careful and look out before I get out into that position to see whether anybody is going to pull the rope. . . . I had to look out for myself when I oiled up in that way." No additional warning or instructions could have given the plaintiff fuller information of the dangers confronting him, and the defendant is not liable on this count. *Mahoney* v. *Dore,* 155 Mass. 513. *Regan* v. *Lombard,* 192 Mass. 319. *Ruddy* v. *George F. Blake Manuf. Co.* 205 Mass. 172, 181. *Goulding* v. *Eastern Bridge & Structural Co.* 210 Mass. 52. Nor can the action be maintained on the second count charging a defect in the ways, works or machinery. The mechanical equipment is not shown to have been out of repair, or its adjustment subsequently changed, making the conditions of service more dangerous, while the mode of oiling, even if inherently unsafe or abnormally dangerous, was known to and appreciated by the plaintiff at the time of employment. *Caron* v. *Boston & Albany Railroad,* 164 Mass. 523, 530, 531. The plaintiff, however, contends, that, even if obvious risks were assumed, he did not assume the chance of injury from the negligence of the superintendent, and therefore he can recover under the first count. *Meagher* v. *Crawford Laundry Machinery Co.* 187 Mass. 586. The jury undoubtedly would have been warranted in finding that the superintendent knew of the scope of the plaintiff's duties and the

manner in which they must be performed. Ordinarily with such knowledge he should have considered the reasonable probability that the plaintiff might be oiling the shaft when he ordered the power turned on, and the failure to take this precaution would have been evidence for the jury of his negligence. *McPhee* v. *Scully,* 163 Mass. 216, 219. *O'Brien* v. *West End Street Railway,* 173 Mass. 105. But it was undisputed that, under the general system of operating the elevator with which the plaintiff was fully acquainted, the superintendent, whenever in his judgment it became necessary, could start the machinery without having ascertained whether the plaintiff might be using the lever as a temporary foothold. The plaintiff had engaged to care for himself, and the order was not in violation of any duty owed to him. *McCann* v. *Kennedy,* 167 Mass. 23. See *Davis* v. *New York, New Haven, & Hartford Railroad,* 159 Mass. 532, 535; *Fairman* v. *Boston & Albany Railroad,* 169 Mass. 170; *Scullane* v. *Kellogg,* 169 Mass. 544.

The exceptions to the admission of evidence not having been argued must be considered as waived.

*Exceptions overruled.*