MICHAEL LYNCH vs. C. J. LARIVEE LUMBER COMPANY.

Suffolk.    January 14, 1916. — March 4, 1916.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Negligence*, Employer's liability.   *Evidence*, Opinion: experts, Photographs,
Deposition.  *Practice, Civil*, Conduct of trial.

Where, before the workmen's compensation act went into effect, an employee of
the proprietor of a lumber yard was injured by the falling upon him of a tem-
porary lumber pile as he was assisting in loading a plank from the pile to a
wagon, he cannot recover for his injuries in an action against his employer
under the employers' liability act based upon alleged negligence of a superin-
tendent, who was the defendant's yard foreman and who a few days before the
accident had ordered the pile placed where it was, if it appears that the super-
intendent was not present when the plaintiff was injured and there is no evi-
dence that he was present when the lumber was piled, nor that he directed the
piling, nor that he selected for the work other than competent and experienced
men, nor that he knew that the pile when completed was unsafe or knew or
should have known that it probably would become unstable and dangerous
from any cause other than interference with the support one plank afforded
to the other, nor that he directed the removal of the plank nor that it was his
duty as yard foreman to superintend the performance of such work.

In the case above described, it appeared that the plaintiff was a teamster of six-
teen years' experience in the defendant's yard, that he was assisting in the load-
ing of the plank at the direction of a "tallyman," so called, whose duty, upon
receiving orders on slips of paper from the defendant's office, was to procure
from the superintendent men to assist in loading on teams the lumber called
for on the order as he should find it, he having charge of the loading of the
teams and the men being under a duty to obey him; but there was no evidence
that the tallyman had any knowledge of the manner in which the pile which
fell had been built or of its condition as to safety beyond what was apparent
to the observation of the plaintiff and his experienced co-workers.  *Held*, that
there was no evidence that the accident was attributable to any act or default of
the tallyman in connection with any matter over which he had or had assumed
to have power of superintendence.

A workman in a lumber yard cannot recover in an action at common law against
his employer for injuries, received by him, while loading lumber from a pile
to a wagon, before the workmen's compensation act went into effect, and
caused by improper construction of the pile, if it appears that the piling was
done by his fellow servants.

It is a proper exercise of discretion by a judge presiding at the trial of an action
for personal injuries due to the falling of a temporary pile of lumber alleged to
have been caused by its improper construction, to exclude expert testimony
upon the question of the proper piling of the pile, the subject requiring no pe-
culiar learning or experience and being one upon which the jury can have no dif-

ficulty in forming an opinion for themselves as to the likelihood of the pile to fall and injure a person near it.

It is improper for a judge presiding at a trial of an action for personal injuries caused by the fall of a pile of lumber to admit in evidence unverified photographs of piles of lumber, if they are not received as chalks and it is not contended that they represent actual conditions as they existed at the time of the accident.

Where, after the plaintiff has rested at the trial of an action at common law, the defendant also rests without having introduced any evidence and without offering in evidence a deposition of a witness, which had been taken at his request and by consent of parties under Rule 35 of the Superior Court two days before the trial of the action, copies having been submitted to the counsel for both parties but the original not having been filed with the clerk of the court as required by Rule 36, it is proper for the presiding judge to refuse to permit the plaintiff to introduce the deposition in evidence.

TORT for personal injuries received by the plaintiff while in the defendant's employ on October 10, 1911. Writ dated December 15, 1911.

In the Superior Court the case was tried before *Hall*, J. The declaration and the material evidence and exceptions are described in the opinion. In regard to the deposition of Hanify, mentioned in the opinion, the record stated as follows in substance: The case had been specially assigned for a trial on May 19, 1913. On Thursday, May 15, on request of the counsel for the defendant, the counsel for the plaintiff agreed to go to Salem Hospital on Saturday for the purpose of taking the deposition of Hanify. This was done on May 17 by agreement, both counsel receiving a copy of the testimony. On May 19, when the case came up for trial, there had been struck off on the typewriter by a member of the law firm who represented the defendant at the taking of the deposition, three copies of the statement of the witness, one of which had been sent to the plaintiff's counsel, and two sent to the defendant's counsel. Neither one of these copies had been filed, although all three were in court in the possession of the respective counsel. Upon the completion of the plaintiff's case, the defendant having rested his case, and the testimony of Hanify not being offered by the defendant, the plaintiff asked that the evidence be admitted under Rule 35 of the Superior Court as a deposition taken in behalf of the defendant. The deposition was excluded; and the plaintiff excepted. At the close of the evidence, by agreement of all parties the judge ordered a verdict for the defendant and reported the case to this court with the understand-

ing that, if the case should have been submitted to the jury, judgment was to be entered for the plaintiff in the sum of $1,250; otherwise judgment was to be entered for the defendant.

*G. P. Beckford,* for the plaintiff.

*G. C. Dickson & C. S. Knowles,* for the defendant, submitted a brief.

PIERCE, J.   The plaintiff was an employee of the defendant, and at the time of his injury was engaged with some fellow employees in taking planks from a pile in the defendant's lumber yard.   The pile was four or five feet high and five tiers wide.   It was made up of $2 \times 8$ and $4 \times 6$ timbers, twenty-eight or thirty feet long, not tied.   It was thrown by the side of the roadway temporarily, waiting for orders, "certain lengths to be picked out of it, . . . piled up for a matter of two or three days," and "not put there for a permanent pile at all."

The plaintiff testified: "The custom of piling piles in the driveway 'on orders' has existed on the wharf of this company from the time I went to work there down to the present time," sixteen years; that he was a teamster and not a piler; that he had taken lumber off of the piles and also, while testifying as to the propriety and safety of putting timber up, that "The higher up they are the more care should be observed in the putting in of the sticks, and if I had a pile of planks $2 \times 8$ lying on the ground up 16 planks thick, that would be safe enough."   There is no better way of finding out whether a pile is secure or not than to go right up and take hold of it.   "There is a sort of feeling when you take hold and shake the pile that shows when it is secure."   As to the circumstances attending his injury he testified: "I had my team loaded in what they call No. 3 driveway and tried to get out, but there was one of the other teams blocking the driveway so I couldn't get out, and when I see I couldn't get out, why, I got off the wagon and, as it is always customary to do, started to help the teamster.   As I stopped my team and got off and went up to the pile the man in charge of the job, Mr. Hanify — they were just ready to raise a stick at the time — he said 'Come on, Lynch,' 'break it,' so I stepped in to break it.   I got down off the team and walked toward the pile, just walking about thirty feet, you might as well say, got off my team and walked up for to help to load the wagon, and when Hanify told me to break it I stepped

in for to break it and it came over on me. The breaker is what we call the pivot. There are either a man or two men on each end of the stick, and when they raise the stick the man that is called the pivot or breaker generally steps in and they place it on his shoulder, and he swings it around, the man on front end lets go and the men on the back end bears down, and you swing around, and place the forward end on the wagon. The breaker stands, I should judge about the middle of the pile and when Hanify told me to break it down, I walked in alongside of the pile for to get it on my shoulder and the pile came over on to me. It hit me in the ankle and knocked me down and broke my ankle. The stick had not left the hands of the men who were to place it on my shoulder and I had done nothing after leaving my team and walking toward the pile except when receiving that direction stood about opposite the centre of the pile. Hanify is the man in charge of the job, in charge of loading the wagon. He was tallying and directing the men what sticks to put on the wagon. He always held the same position and he always did the same work. I stood right up close to the pile. I had not noticed what kind of a pile or how it was piled. I did not know that when they lifted this stick the pile was likely to fall over on me, if I did I would not be there."

The plaintiff's declaration is in three counts, two under the employers' liability act, R. L. c. 106, § 71, cl. 1, 2, and one at common law. Count 1 alleges as the cause of the plaintiff's injury "the negligence of the defendant or of a person in the employ of the defendant exercising superintendence and whose sole or principal duty was superintendence in failing to warn the plaintiff of the dangerous condition of a certain pile of lumber to which the plaintiff had been sent to work." Count 2 alleges that the plaintiff "was injured owing to a defect in the ways works and machinery used in the business of the defendant which arose from the negligence of a person in the employ of the defendant exercising superintendence whose sole or principal duty was that of superintendence to wit, the careless piling of a pile of lumber." Count 3 that the plaintiff "was injured owing to the negligence of the defendant in permitting said pile to be in a dangerous and unsafe condition which condition was unknown to the plaintiff but should have been known to the defendant." Each count alleges the due care of the plaintiff and, by amendment allowed by

consent, that "due notice of the time, place and cause of said injury was given the defendant."

One Brown testified: "I was foreman, yard foreman. . . . I took my orders from Parsons, the superintendent. These tallymen while they were working down in the yard would come to me for help to load their team. . . . A tallyman was necessarily a man who wrote a good hand and was fit for clerical work. I can't say how frequently they would help load teams, but when necessity demanded it. When we were unloading vessels it was necessary for them to take out lumber off the edge of the wharf as fast as it was demanded and pile it up. At that time we had a large number of men, from twenty to thirty; at other times about four or five steady men, when we were not unloading vessels, and teamsters besides, about half a dozen. Besides the yard men whatever teamsters there were under my charge when they were in the yard loading the wagons. Not only them but also when they were loading the wagons the tallymen were under my charge; and the tallymen were obliged to come to me for help when they needed help to load a wagon. The tallymen did various other things, worked in the dry house, sometimes cleaning up the shed, swept up the shed, something like that to keep busy under my orders and those of Mr. Parsons."

The jury would be warranted upon this testimony in finding Brown was a superintendent within the meaning of the act. Brown, who was not present at the time of the accident, had ordered the pile of timber from which the planks fell to be placed by the side of the roadway a few days before the day of the plaintiff's injury, but there is no evidence that he was present at the piling, that he directed the manner of piling, that he selected for the work other than experienced and competent men, that he knew that the pile as set up was in fact unsafe or knew or should have known that it probably would become unstable and dangerous from any cause other than interference with the support one plank afforded to the others. Nor is there any evidence that he directed the removal of the planks or that it was his duty as yard foreman to superintend the tallymen in the performance of such work.

Outside of the fact that a part of the pile fell at the moment of the removal of a single plank there is no evidence of the instability of the pile or that any unusual and hidden danger lurked in it.

What relation of support, if any, the plank last removed sustained to others, is pure conjecture as is the question whether its removal was not a negligent act of fellow servants.

The evidence does not warrant a finding of fact that the pile was unsafe by reason of any act or default of the superintendent, Brown, that he knew or should have known that it was unsafe for the plaintiff to work upon or about it. It follows that there was no duty of the superintendent that required him to warn the plaintiff of the danger attendant upon his work.

The tallyman, Hanify, who set the plaintiff at work, is not shown to have had knowledge of the manner of the original piling or of the condition of the pile as to safety beyond what was apparent to the observation of the plaintiff and to that of his experienced co-workers. Upon receiving orders on slips from the office it was the tallyman's duty to procure of the superintendent, Brown, men to assist in loading on teams the lumber that was called for on his order as he should find it. In doing this work the men were supposed to obey him and he had charge of the loading of the teams. There is no evidence that the accident was attributable to any act or default of Hanify in connection with any matter over which he had or had assumed to have power of superintendence.

That there can be no recovery upon the common law count is settled by *Regan* v. *Lombard*, 181 Mass. 329.

We do not find it necessary to determine whether the plaintiff was in the exercise of due care. See *Baldwin* v. *St. Louis, Keokuk & Northern Railway*, 68 Iowa, 37.

The presiding judge was clearly right in the exclusion of the proffered expert testimony upon the question of the proper piling of the pile, as the subject required no peculiar learning or experience and was one upon which the jury could have no difficulty in forming an opinion for themselves as to the liability of the pile to fall and injure a person who should be near it. *New England Glass Co.* v. *Lovell*, 7 Cush. 319. *Baldwin* v. *St. Louis, Keokuk & Northern Railway, supra. Whalen* v. *Rosnosky*, 195 Mass. 545.

The photographs were improperly admitted in evidence. They were not verified, they were not received as chalks, and there was no pretence that they represented actual conditions as they existed

at the time of the accident. *Blair* v. *Pelham,* 118 Mass. 240. *Everson* v. *Casualty Co. of America,* 208 Mass. 214.

The deposition was properly excluded in the discretion of the court; it had never been filed under Rule 36 of the Superior Court, and when it was offered both parties had rested. *Carriere* v. *Merrick Lumber Co.* 203 Mass. 322, 327.

It follows that evidence could not properly have been submitted to the jury, that the direction of a verdict for the defendant was rightly ordered and that now in accordance with the terms of the report judgment for the defendant should be entered. And it is

*So ordered.*