MICHAEL HYLAND *vs.* WILLIAM J. SEAVER.

Worcester.    September 22, 1941. — December 28, 1942.

Present: FIELD, C.J., QUA, DOLAN, COX, & RONAN, JJ.

*Negligence,* Handling of freight, Duty to warn.

A truckman could not properly have been found negligent toward an experienced employee of a consignee of crates, which were to be delivered to the consignee's platform, for personal injuries sustained when, due to the way the crates were loaded on the truck, one of them, while still on the truck and during the process of unloading, fell on him, where there was no evidence that the truckman or any employee of his participated in the unloading or that the method of loading involved any risk not obvious to an ordinarily intelligent person.

TORT. Writ in the Third District Court of Southern Worcester dated April 23, 1938.

On removal to the Superior Court, the case was tried before *Dillon,* J.

*E. Z. Dymsza,* for the plaintiff.

*M. Rubin,* (*J. C. McDonald & J. H. Droney* with him,) for the defendant.

FIELD, C.J.    This action of tort was brought to recover compensation for personal injuries sustained by the plaintiff when unloading wooden crates containing copper plates from a motor truck owned by the defendant, who was doing business as Seaver's Express, by reason of the alleged negligence of the defendant, his agents or servants. The case was tried in the Superior Court by a judge and a jury. At the close of the plaintiff's case both parties rested, and a motion by the defendant for a directed verdict was allowed. The plaintiff's exceptions to the allowance of the motion and to the exclusion of evidence offered by him bring the case here.

1. There was no error in the allowance of the motion for a directed verdict since the evidence did not warrant a finding of negligence of the defendant, his agents or servants.

It was agreed at the pre-trial that "the plaintiff at the time of the accident was in the employ of the Draper Company . . . and that the defendant was an independent contractor doing business with the Draper Company."

The material evidence bearing upon liability was substantially as follows: The defendant delivered three wooden crates containing copper plates to the plaintiff's employer by motor truck. The crates were each about eight feet long, four feet wide and five or six inches thick. Their gross weight was one thousand, seven hundred forty-six pounds. These crates rested on the floor of the motor truck upon the five or six inch dimension of the crates. One of the crates leaned against the left side of the motor truck — looking from rear to front of the motor truck — another leaned against this crate, and the third against the second crate.

Only one employee of the defendant — the operator of the motor truck — went with the shipment. The plaintiff's foreman, an employee of the Draper Company, testified that "he never had a talk with Mr. Seaver about loading and unloading or anybody in authority of Seaver's Express on other occasions," and when asked where, with regard to Seaver's Express, "were the deliveries to be made," he answered "Platform delivery." The operator of the motor truck backed it up against the receiving platform of the plaintiff's employer. This platform was about four feet from the ground. The left side of the floor of the motor truck was about four inches lower than the platform; the right side about three or four inches higher than the platform. The operator of the motor truck told the plaintiff's foreman that he needed help to unload the motor truck. This foreman sent the plaintiff to help. The plaintiff, according to his own testimony, "had been in the shipping end of the work" for his employer for four years prior to the time of the accident, and at that time his duties "consisted of unloading trucks, freight cars, delivering freight." When the plaintiff "went out there three others were with him who were in the same employ as himself." There was no evidence that the operator of the motor truck took any part

actively or by giving instructions in unloading the crates from the motor truck, but there was evidence that he did not. And there was no evidence, not herein recited, of any arrangement between the plaintiff's employer and the defendant as to unloading the crates from the truck.

The plaintiff went upon the motor truck, and the other workmen remained on the receiving platform. The plaintiff, according to his own testimony, "got up on the short end of the crate [the third crate from the left side of the motor truck] and tipped it up and then slid it on the five-inch part of the crate; and when he tipped it up that made the bottom of the crate flat on the platform of the truck and when he got it down to the end of the truck the other men got hold of the end that was on the platform . . . they pulled it off the truck; he did the same thing with the second one; when the accident happened the second crate had just cleared the end of the truck; it was about a foot from the body of the truck when the accident happened; when that was being done, he, the plaintiff was about the center of the crate; he just stepped back, stepped back about two steps; he was about center-way of the crate; about four feet from the end of the truck, with reference to the remaining crate immediately before the accident happened he was about three feet away from the crate; that is from the left side of the truck; nothing that he knew of was touching that crate immediately before it tipped over; it happened about five seconds after the second crate was off; at the time it happened he was watching the other men pulling the crate away . . . it hit his ankle . . . it did not catch his foot under the crate . . . after the first two crates came off the level of the truck was changed and the truck raised almost even with the platform, the . . . [right] side was a couple of inches high . . . [the left] side came up about three inches."

Interrogatories were propounded by the plaintiff to the defendant and with the answers thereto were introduced in evidence by the plaintiff. Among these interrogatories and answers thereto were the following: "Int. No. 7. Please describe how these crates were fastened upon your truck in

preparation for their delivery to the Draper plant. Ans. They were not fastened. . . . Int. No. 9. When your truck arrived at the plant of the Draper Corporation please state in full detail all arrangements that were made by your servants for the unloading of the crates. Ans. The truck conveying the crates was backed to the loading platform. . . . Int. No. 11. Please state what instructions were given by your servants and agents to employees of the Draper Corporation with reference to the unloading of the crates from the truck. Ans. None. . . . Int. No. 16. Were any warnings or cautions given by your servants and agents with reference to the unloading of the crates from your truck. Ans. Not to my knowledge. Int. No. 19. Please state whether or not there was any danger apparent from the manner in which the crates were upon the truck at the time of the delivery so that anyone coming upon the truck could be aware of the danger and thus be warned to take precautions against the same. Ans. Not to my knowledge."

There was no evidence of negligence on the part of the operator of the motor truck in backing it up to the receiving platform. And there was no evidence that the defendant personally or the operator of the motor truck or any other agent or servant of the defendant participated in any way in unloading the crates from the motor truck. Even if, as we do not intimate, it could have been found that, according to the arrangement between the defendant and the plaintiff's employer for the delivery of the crates, it was a part of the defendant's contractual duty to unload them upon the receiving platform, it could not have been found that the defendant or his agents or servants actually unloaded them. No negligence, therefore, on the part of the defendant or of his agents or servants in unloading the crates from the motor truck could have been found.

The plaintiff, however, seeks to impose liability on the defendant on the ground that the crates were loaded upon the motor truck in an unsafe manner and that the duty was cast upon the defendant of giving warning to the plaintiff of any risk of harm to him resulting from the manner in

which the crates were loaded upon the motor truck. But even if, as we do not decide, it could have been found that the crates were loaded upon the motor truck by a person or persons for whose conduct the defendant was responsible, the evidence would not warrant a finding of negligence on the part of the defendant, his agents or servants. There is nothing in the evidence to show that there was any risk of harm to persons unloading the crates from the motor truck resulting from the manner in which the crates were loaded thereon that was known or should have been known to the defendant or his agents or servants and was not obvious to an ordinarily intelligent person unloading the crates from the motor truck, particularly a person of the plaintiff's experience as disclosed by his testimony. *Sampson* v. *Holbrook*, 192 Mass. 421, 422. *Boisvert* v. *Ward*, 199 Mass. 594, 596. *Lynch* v. *C. J. Larivee Lumber Co.* 223 Mass. 335, 340. See *Hyde* v. *Allen*, 243 Mass. 536, 538; *O'Brien* v. *Boston & Maine Railroad*, 265 Mass. 527, 530; *Kelley* v. *Goldberg*, 288 Mass. 79, 81; *Willis* v. *Skinner*, 94 Kans. 621, 625–626. It does not appear that even if the motor truck was loaded by the defendant, his agents or servants, the risk of harm from the manner in which it was loaded was not as obvious to the plaintiff as to them. See *Sampson* v. *Holbrook*, 192 Mass. 421, 422; *Lynch* v. *C. J. Larivee Lumber Co.* 223 Mass. 335, 340. No distinction in this respect can be based on the ground suggested by the plaintiff that the person or persons who loaded the crates on the motor truck knew the weight of them. And there was nothing in the evidence to show that there was anything in the situation that was not as obvious to the plaintiff as to the operator of the motor truck. "In the law of torts there is, in general, no duty to warn unless the person on whom the duty would be cast has some reason to suppose that a warning is needed." *Cadogan* v. *Boston Consolidated Gas Co.* 290 Mass. 496, 499–500. The evidence does not meet this requirement of proof. The case is distinguishable from cases relied upon by the plaintiff in which it could have been found that the risk of harm was not obvious to the person injured. See *Millard* v. *West End Street Railway*, 173 Mass. 512; *Meehan* v. *Gordon*, 307 Mass.

59; *Hart* v. *M. S. Kelliher Co.* 308 Mass. 213; *Spear* v. *Chelsea Building Wrecking Co. Inc.* 308 Mass. 416.

2. The plaintiff's foreman was asked by counsel for the plaintiff: "And with regard to Seaver's Express deliveries, where were the deliveries to be made?" and answered "Platform delivery." He was then asked: "And what does platform delivery mean?" The question was excluded and the plaintiff excepted. Without considering the exclusion of this question in other aspects it is enough to say, in the light of what has been said with respect to the motion for a directed verdict, that the bill of exceptions does not show that the plaintiff was harmed by the exclusion.

*Exceptions overruled.*